**MANDATE** 

1:18-cv-07217-GBD-SN

20-1261-cv
*Acun v. Merrill Lynch Pierce Fenner & Smith, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of March, two thousand twenty-one.

PRESENT:
　　PIERRE N. LEVAL,
　　GERARD E. LYNCH,
　　JOSEPH F. BIANCO,
　　　　*Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/6/2021

Soner Acun,

　　*Plaintiff-Appellant*,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　20-1261-cv

Merrill Lynch Pierce Fenner & Smith, Inc.,

　　*Defendant-Appellee*.


FOR PLAINTIFF-APPELLANT:　　　　SONER ACUN, *pro se*, Gainesville, FL.

FOR DEFENDANT-APPELLEE:　　　　RIMA HARTMAN (Diana C. Manning, Florham Park, NJ, *on the brief*), Bressler, Amery & Ross, P.C., Birmingham, AL.

MANDATE ISSUED ON 05/06/2021

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, *J.*; Netburn, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Soner Acun, *pro se*, sued his former employer, Merrill Lynch Pierce Fenner & Smith, Inc. ("Merrill Lynch"), alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. The parties, through counsel, reached a settlement at a conference with the magistrate judge. After reciting the terms of the settlement on the record, the magistrate judge confirmed that both parties understood and accepted the material terms and understood that acceptance constituted an oral contract (the "Oral Agreement"). The magistrate judge also directed the parties to memorialize the Oral Agreement in writing. Acun rejected several draft writings proposed by Merrill Lynch, and then moved to reinstate the action, claiming that the Oral Agreement was not binding. Merrill Lynch, in turn, moved to enforce the Oral Agreement. The magistrate judge issued a report and recommendation, which recommended granting Merrill Lynch's motion, and the district court adopted that recommendation. Acun appeals. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision.

In reviewing a district court's decision to enforce a settlement agreement, we review legal conclusions *de novo* and factual findings, including whether a settlement agreement existed and the parties assented to it, for clear error. *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d

320, 322 (2d Cir. 1997). "A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).[1] An oral agreement is enforceable where the parties manifested an intention to be bound by it. *See id.* at 129–30. Generally, a "settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing." *Id.* at 129. The agreement need not be reduced to writing if it is entered into voluntarily on the record in open court. *See id.* at 129.

To determine if parties intend to be bound by an oral contract, "[t]he court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). "No single factor is decisive, but each provides significant guidance." *Ciaramella*, 131 F.3d at 323. As set forth below, application of the *Winston* factors strongly supports the parties' intent to be bound in the instant case by an oral contract and, thus, the district court correctly concluded that the Oral Agreement should be enforced.

### A. Express Reservation

The first *Winston* factor—whether the parties expressly reserved the right not to be bound absent a writing (which encompasses consideration of whatever manifestations the parties have

---

[1] Although we have not decided whether federal or state law should govern a motion to enforce a settlement, there is no material difference between New York contract law and federal common law regarding the enforceability of oral settlement agreements. *See id.* at 129 n.1.

3

made to one another on the subject of intent to be bound on reaching an oral agreement)—"is frequently the most important." *Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005). Acun argues that the no-oral-modification and merger clauses contained in each proposed draft of the written memorialization is evidence that the parties never intended to be bound absent a written agreement. However, during the settlement conference, the magistrate judge made clear on the record that, although "the parties intend[ed] to memorialize the agreement in writing," the parties were about "to enter into an enforceable oral contract and set forth all of th[e] material terms." Joint App'x at 35. The magistrate judge further confirmed with Acun personally and in open court that he was "entering into a binding and enforceable *oral agreement*." Joint App'x at 37 (emphasis added). Moreover, "neither party made any express reservation to be bound only by a writing," further evincing the parties' understanding that "the settlement's reduction to writing was only a formality." *Powell*, 497 F.3d at 130. Accordingly, the district court was correct in concluding that the first *Winston* factor favored enforcement.

### B. Partial Performance

Partial performance favors enforcement when "one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." *Ciaramella*, 131 F.3d at 325; *see also Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 443 (S.D.N.Y. 2003) (noting that "[p]artial performance requires some actual performance of the contract," meaning the parties "must have conferred something of value"). The Oral Agreement's material terms were that, in exchange for a payment, Acun would dismiss all claims with prejudice and release all claims "that he did bring or could have brought

4

against [Merrill Lynch] from any period of time up until the date that" he signed a written agreement, the terms of the agreement would remain confidential, and Acun would not seek permanent or contract-based employment with Merrill Lynch in the future. Joint App'x at 35. Acun argues that there was no partial performance because he did not sign the Merrill Lynch drafts and did not dismiss the action. However, the district court noted as evidence of partial performance that the parties began negotiating the memorialization of the Oral Agreement and ceased litigating the action after the settlement conference.

We have not specifically addressed whether such actions constitute partial performance. We need not decide the question here, however, because even if we assume without deciding that the district court erred in concluding that this factor "weigh[ed] . . . slightly toward enforcing the agreement," Joint App'x at 22, the absence of partial performance is at best neutral, and, in addition to the first *Winston* factor, the remaining two *Winston* factors strongly evince an intent to be bound by an oral contract and favor enforcement of the settlement.

### C. Open Material Terms

The district court correctly held that the third *Winston* factor—whether the oral agreement covered the material terms—favored enforcing the Oral Agreement. This factor is satisfied if "there was literally nothing left to negotiate." *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 831 (2d Cir. 2019) (internal quotation marks omitted). During the settlement conference, both parties confirmed the magistrate judge's recitation of the Oral Agreement's material terms; neither side objected at any point. When asked whether he understood and accepted the Oral Agreement's material terms, Acun answered in the affirmative

5

and acknowledged that, by accepting those material terms, he was entering into a binding and enforceable oral agreement on those terms. In other words, what was agreed to on the record in open court contained all of the material terms of the settlement agreement.

Acun argues on appeal that the Merrill Lynch drafts contained certain terms to which he did not assent, such as clauses relating to "Tax Indemnification, Future Cooperation, Confidential Information, Severability, Indemnification by Merrill Lynch, [and] Consent to Injunction for Breach[.]" Appellant's Br. at 14. "[M]inor or technical changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing." *Powell*, 497 F.3d at 130 (internal quotation marks omitted). However, "[s]uch changes are relevant . . . only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides *in every respect*." *Id.* (emphasis added) (internal quotation marks omitted). There was no such indication on the record here because, during the settlement conference, Acun and his attorney acknowledged that Acun was entering the binding Oral Agreement on the specific material terms that were explicitly articulated. In short, although the Merrill Lynch drafts contained additional clauses beyond the scope of the Oral Agreement, it is clear from the record that none of those clauses were material to the enforcement of the Oral Agreement and, thus, as to the material terms contained in the Oral Agreement, "there was literally nothing left to negotiate." *Attestor Value Master Fund*, 940 F.3d at 831 (internal quotation marks omitted).

6

Acun also argues that Merrill Lynch's inability to commit to releasing all potential counterclaims against him during the settlement conference is evidence of an open material term. However, at no point during the settlement conference did Acun or his attorney mention such a release as a material term, or condition Acun's assent to the Oral Agreement upon it. Moreover, the proposed written settlements (that Acun refused to sign) did contain a release provision. Accordingly, the third *Winston* factor favored enforcement.

### D. Type of Agreement Usually Reduced to Writing

The fourth *Winston* factor considers whether the agreement is of a type that is usually expressed in a written instrument. We think that what *Winston* had in mind in this reference to a writing (as well as the reference in the first factor) is a written instrument whose status as a binding contract has been acknowledged either by signature or by express oral acceptance. We conclude that the district court was correct in finding that this factor favored enforcement because the placement of the Oral Agreement on the record, together with Acun's personal assent, was "akin to a writing" whose binding nature had been acknowledged. Joint App'x at 25. Acun asserts that the district court erred because the Oral Agreement's terms were "complex" and contained "multiple provisions that extend[] to perpetuity." Appellant's Br. at 15. He then analogizes the Oral Agreement to the agreements in *Ciaramella*, 131 F.3d at 326, which contained certain perpetual rights, and *Winston*, 777 F.2d at 83, which contained payments spread over several years. However, Acun overlooks a critical distinction between those cases and this one—the material terms of the agreements in those cases were not announced or assented to in open court, whereas the material terms here were. *See Ciaramella*, 131 F.3d at 321, 326 (out-of-court oral agreement);

7

*Winston*, 777 F.2d at 78–79, 83 (same). Here, the in-court announcement of the Oral Agreement's material terms, to which Acun personally assented on the record, was "akin to that of a memorializing writing." *Powell*, 497 F.3d at 131. Thus, this *Winston* factor also favored enforcement.

\* \* \*

In sum, because the negotiation in the presence of the magistrate judge included an expression of intent to be bound by the Oral Agreement and left no material terms open for further negotiation, and because the parties entered an oral agreement that was akin to a writing, the *Winston* factors favored enforcement of the Oral Agreement, even if no partial performance had yet taken place at the time Acun disclaimed the terms of the Oral Agreement. Therefore, the district court properly enforced the Oral Agreement.

We have considered all of Acun's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit